Larry R. Woolford
SANDERS POULSON WOOLFORD, LLC
636 Harris Street Juneau, AK 99801
(907) 586-6529
larry@spw.law

Attorney for the Plaintiff

# United States District Court
## District of Alaska at Juneau

| | |
|---|---|
| Mark Tupper,<br><br>      Plaintiff,<br><br>  v.<br><br>3M Company,<br><br>      Defendant. | Case No. |

## Complaint for Damages

Plaintiff Mark Tupper, through counsel, Sanders Poulson Woolford, LLC, alleges against the defendant, 3M Company, as follows:

### Parties, Jurisdiction and Venue

1. The plaintiff, Mark Tupper, is a resident of Alaska.

2. 3M Company ("3M") is a business corporation organized under the laws of Delaware, with its principal place of business in Minnesota.

3. This court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because complete diversity of citizenship exists between the parties and the amount in controversy is greater than $75,000.

4. This court has personal jurisdiction over the defendant because 3M is properly authorized to transact business in Alaska by the Alaska Department of Commerce, Community and Economic Development, and may be served with process through its registered agent: Corporation Service Company, 9360 Glacier Hwy., Ste. 202, Juneau, AK 99801.

5. Venue is proper under 28 U.S.C. § 1391.

### Factual Background

6. Based upon information and belief and in part upon the pleadings and allegations contained in *United States ex rel Moldex-Metric, Inc. v 3M Company*, Case No 3:16-cv-01533-

SANDERS POULSON WOOLFORD, LLC
ATTORNEYS AT LAW
636 Harris Street
Juneau, Alaska 99801
(907) 586-6529 • (907) 586-6329 Facsimile

DCC (D.S.C.2016), the plaintiff states as follows:

**3M's Defective Combat Arms™ Earplugs**

7. On July 26, 2018, the defendant agreed to pay $9.1 million to resolve allegations that it knowingly sold the dual-ended Combat Arms™ Earplugs to the United States military without adequately warning about defects and/or disclosing defects that hampered the effectiveness of the hearing protection device. *See* United States Department of Justice, *3M Company Agrees to Pay 91 Million to Resolve Allegations That it Supplied the United States With Defective Dual-Ended Combat Arms Earplugs (*Jul. 26, 2018), *available at* https://www.justice.gov/opa/pr/3m-company-agrees-pay-91-million-resolve-allegations-it-supplied-united-states-defective-dual (last visited September 21, 2019).

8. The defendant's dual-ended Combat Arms™ earplugs are non-linear, or selective attenuation, earplugs, which were designed to provide soldiers with two different options for hearing attenuation depending upon how the plugs are worn. Both sides of the dual sided earplugs were purported to provide adequate protection for soldier's ears when worn.

9. If worn in the "closed" or "blocked" position (olive end in), the earplugs are intended to act as a traditional earplug and block, or at least significantly reduce, as much sound as possible.

10. If worn in the "open" or "unblocked" position (yellow end in), the earplugs are intended to block, or at least significantly reduce, loud impulse sounds such as battlefield explosions and artillery fire, while still allowing the user to hear quieter noises, such as commands spoken by fellow soldiers, or approaching enemy combatants.

11. Defendant's standard fitting instructions state the wearer is to grasp the earplug by the stem and insert it into the ear canal.

12. The design of the earplug prevents a snug fit in the ear canal of the wearer, an inherent defect about which there was no adequate warning.

13. When inserted according to the defendant's standard fitting instructions, the edge of the third flange of the non-inserted end of the earplug presses against the wearer's ear canal and folds back to its original shape, thereby loosening the seal in the ear canal and providing inadequate protection.

14. Because the earplugs are symmetrical, the standard fitting instructions will result in a loosening of the seal whether either side is inserted into the ear canal.
**Sanders Poulson Woolford, LLC**
Attorneys at Law
636 Harris Street
Juneau, Alaska 99801
(907) 586-6529 • (907) 586-6329 Facsimile

15. These earplugs were originally created by a company called Aearo Technologies ("Aearo" or "3M/Aearo").

16. Defendant 3M acquired Aearo in 2008, including Aearo's liabilities, and thus 3M is liable for Aearo's conduct as alleged herein.

17. Earplugs like the dual-ended Combat Arms™ earplugs are sold with a stated Noise Reduction Rating ("NRR")[1] that should accurately reflect the effectiveness of hearing protection.

18. The military likely purchased, at a minimum, one pair of 3M's Combat Arms™ earplugs for each deployed soldier annually involved in certain foreign engagements between at least 2003 and at least 2015. *See* McIlwain, D. Scott *et al., Heritage of Army Audiology and the Road Ahead The Army Hearing Program,* AMERICAN JOURNAL OF PUBLIC HEALTH, Vol. 98 No. 12 (Dec 2008).

19. 3M's/Aearo's dual-ended Combat Arms™ earplugs were sold to the military beginning in at least late 2003 and continued to be sold directly and indirectly by 3M to the military until at least late 2015, when Defendant discontinued the earplugs.

20. The defective earplugs have not been recalled and therefore could very well be in continued use by soldiers and others.

### History of Testing

#### January 2000 Testing

21. Employees from 3M/Aearo began testing the dual-ended Combat Arms™ earplugs in approximately January 2000.

22. 3M/Aearo chose to conduct the testing at its own laboratory rather than an outside independent laboratory.

23. 3M/Aearo's employees personally selected ten test subjects (some of whom were also employees of 3M/Aearo) to test the dual-ended Combat Arms™ earplugs.

---

[1] Noise Reduction Rating NRR is a unit of measurement used to determine the effectiveness of hearing protection devices to decrease sound exposure within a given working environment. Classified by their potential to reduce noise in decibels (dB), a term used to categorize the power or density of sound, hearing protectors must be tested and approved by the American National Standards Institute (ANSI) in accordance with the Occupational Safety Health Administration (OSHA). The higher the NRR number associated with a hearing protector the greater the potential for noise reduction.

Sanders Poulson Woolford, LLC
Attorneys at Law
636 Harris Street
Juneau, Alaska 99801
(907) 586-6529 • (907) 586-6329 Facsimile

24. 3M/Aearo's employees intended to test: (1) the subject's hearing without an earplug inserted; (2) the subject's hearing with the open/unblocked (yellow) end of the dual-ended Combat Arms™ earplug inserted; and (3) the subject's hearing with the closed/blocked (olive) end of the dual-ended Combat Arms™ earplug inserted. This testing was designed to provide data regarding the NRR of the dual-ended Combat Arms™ earplugs.

25. 3M/Aearo personnel monitored the results of each subject as the test was performed and could thus stop the test if the desired NRR results were not achieved.

26. Eight of the ten subjects were tested using both the open and closed end of the Dual-ended Combat Arms™ earplug.

27. Testing of the eight subjects suggested an average NRR of 10 9 which was far below the adequate NRR that 3M /Aearo personnel would and should have expected for the closed end.

28. 3M/Aearo prematurely terminated the January 2000 testing of the closed end of the Dual-ended Combat Arms™ earplug.

29. 3M/Aearo personnel determined that when the closed, olive end of the earplug was inserted into the wearer's ear according to standard fitting instructions, the basal edge of the third flange of the open, yellow end would press against the wearer's ear and fold backwards. When the inward pressure on the earplug was released, the yellow side flanges would return to their original shape and cause the earplug to loosen, often imperceptible to the wearer.

30. The symmetrical nature of the earplug prevents a snug fit when worn either "open" or "closed" according to the standard fitting instructions.

31. 3M/Aearo personnel determined that a snug fit requires the flanges on the opposite, non-inserted end of the ear plug to be folded back prior to insertion.

32. 3M/Aearo personnel decided not to test the closed end of the dual-ended Combat Arms™ earplug for two of the ten subjects because the results were well below the intended and desired NRR.

33. 3M/Aearo completed testing of all ten subjects with the open end of the dual-ended Combat Arms™ earplug to obtain a facially invalid -2 NRR, which would indicate that the closed end of the earplug actually amplified sound.

34. 3M/Aearo represented the -2 NRR as a "0" NRR which 3M/Aearo has displayed on its packaging since its launch.

35. 3M/Aearo falsely touts the "0" NRR as a benefit of the dual-ended Combat Arms™ earplug by suggesting that soldiers will be able to hear their fellow soldiers and enemies while still providing some protection. As stated, however, the "true" -2 NRR actually amplifies sound, thereby exposing the wearer to harm.

### February 2000 Testing

36. Upon identifying the fit issue, 3M/Aearo re-tested the olive, closed end of the dual-ended Combat Arms™ earplug in February 2000 using different fitting instructions.

37. When testing the closed end, 3M/Aearo personnel folded back the yellow flanges on the open end of the dual-ended Combat Arms™ earplug prior to insertion.

38. Using this modified fitting procedure, 3M/Aearo achieved a "22" NRR on the closed end of the dual-ended Combat Arms™ earplug.

39. 3M, however, never properly warned servicemen that the only potential way to achieve this purported NRR was to modify the dual-ended Combat Arms™ earplug by folding the yellow flanges on the opposite end.

40. The yellow open end of the dual-ended Combat Arms™ earplug was not re-tested using the modified fitting procedure.

### Defendant's Representations and Omissions

41. Since 2003, 3M/Aearo has been awarded multiple Indefinite Quantity Contracts ("IQCs") from the U.S military in response to a Request for Proposals ("RFP").

42. From 2003 to 2012, 3M/Aearo was the exclusive supplier of these type of earplugs to the U.S. military.

43. 3M/Aearo was aware of the design defects alleged herein in as early as 2000.

44. Accordingly, the defects of the dual-ended Combat Arms™ earplugs were known to the defendant many years before 3M/Aearo became the exclusive provider of the earplugs to the U.S. military.

45. 3M/Aearo knew at the time it bid for the initial IQC that the dual-ended Combat Arms™ earplugs had dangerous design defects as they would not adequately protect the users from loud sounds and did not adequately warn of the defects or adequately warn how to wear the earplugs.

46. 3M/Aearo responded to the military's RFPs with express certifications that its earplugs complied with the Salient Characteristics of Medical Procurement Item Description ("MPID") of Solicitation No. SP0200-06-R-4202.

Sanders Poulson Woolford, LLC
Attorneys at Law
636 Harris Street
Juneau, Alaska 99801
(907) 586-6529 • (907) 586-6329 Facsimile

47. 3M/Aearo knew at the time it made its certifications that the earplugs did not comply with the MPID.

48. 3M/Aearo knew the design defects could cause the earplugs to loosen in the wearer's ear imperceptibly to the wearer, and even trained audiologists visually observing a wearer, thereby permitting damaging sounds to enter the ear canal by traveling around the outside of the earplug while the user and or audiologist incorrectly believes that the earplug is working as intended.

49. The pertinent Salient Characteristics set forth in the MPID, uniform across all RFPs, in relevant part are as follows:

> 2.1.1. Ear plugs shall be designed to provide protection from the impulse noises created by military firearms, while allowing the wearer to clearly hear normal speech and other quieter sounds, such as voice commands, on the battlefield.
>
> 2.2.2. The sound attenuation of both ends of the ear plugs shall be tested in accordance with ANSI S3.19....
>
> 2.4. <u>Workmanship</u>. The ear plugs shall be free from all defects that detract from their appearance or impair their serviceability
>
> 2.5. <u>Instructions</u>. Illustrated instructions explaining the proper use and handling of the ear plugs shall be supplied with each unit....

50. The Environmental Protection Agency ("EPA") has also promulgated regulations pursuant to the Noise Control Act 42 U.S.C. § 4901 *et seq.*, that govern the testing and attendant labeling of hearing protective devices like the dual-ended Combat Arms™ earplugs. Specifically, 40 C.F.R. § 211.206-1 provides that:

> The value of sound attenuation to be used in the calculation of the Noise Reduction Rating must be determined according to the "Method for the Measurement of Real Ear Protection of Hearing Protectors and Physical Attenuation of Earmuffs." This standard is approved as the American National Standards Institute Standard (ANSI STD) S3.19-1974.

51. Additionally, 40 C.F.R. § 211-204-4(e) of the EPA regulations requires certain "supporting information" must accompany hearing protection devices sold in the United States:

> The following minimum supporting information must accompany the device in a manner that insures its availability to the prospective user. In the case of bulk packaging and dispensing such supporting information must be affixed to the bulk container or dispenser in the same manner as the label and in a readily visible location....

**Instructions as to the proper insertion or placement of the device.**

Emphasis added.

52. 3M/Aearo knowingly used the deliberately flawed retest of the closed end of the earplugs to sell dual-ended Combat Arms™ earplugs to the military with the representation that they possess a "22" NRR in the closed position.

53. The defendant includes standard instructions for "proper use" of the earplugs in the packaging for the earplugs as required by the EPA, Noise Control Act, and the MPID.

54. The defendant's standard instructions for proper use of its dual-ended Combat Arms™ earplugs do not instruct wearers to fold back the flanges of the opposite end before inserting the plug into the ear.

55. Instead, the defendant improperly instructs wearers to simply insert the earplugs into the ear canal.

56. By failing to instruct wearers of the dual-ended Combat Arms™ earplug to fold back the flanges on the open unblocked end of the plug before inserting the closed blocked end of the plug into their ears (which is necessary to achieve the "22" NRR and avoid the defect associated with the short stem), 3M/Aearo falsely overstates the amount of hearing protection provided by the closed end of the plug.

57. 3M/Aearo's packaging and marketing of such earplugs with a labeled NRR of "22" thereby misleads the wearer and has likely caused thousands of soldiers to suffer significant hearing loss and tinnitus in addition to exposing millions more to the risk caused by 3M/Aearo's defective earplugs.

58. Despite knowing that its flawed testing involved steps to manipulate the fit of the earplug, 3M/Aearo's standard instructions for use of the earplugs do not instruct, and never have instructed, the wearer to fold back the flanges on the open end of the plug before inserting the closed end of the plug into their ears, which is necessary to achieve the "22" NRR and avoid the defect associated with the short stem.

59. 3M/Aearo's instructions instead have provided standard fitting instructions for inserting the earplug on both ends which are facially inadequate.

60. 3M/Aearo was aware prior to selling the earplugs to the military that its testing procedures and fitting instructions were unlawfully manipulated to obtain the NRRs it wanted on both ends of the dual-ended Combat Arms™ earplug and 3M/Aearo continued to use these

**Sanders Poulson Woolford, LLC**
Attorneys at Law
636 Harris Street
Juneau, Alaska 99801
(907) 586-6529 • (907) 586-6329 Facsimile

inaccurate NRRs to market the earplugs to the military for more than ten years without disclosing the design defect in the earplugs.

61. Plaintiff reserves the right to supplement these facts after discovery

### Plaintiff Mark Tupper

62. Plaintiff Mark Tupper joined the U.S. Air Force in 1998 at the age of 18. His Military Occupational Specialty was Joint Terminal Attack Controller.

63. Prior to joining the Air Force, the plaintiff had never suffered from nor been diagnosed with tinnitus or hearing loss.

64. During the time of the plaintiff's service, the only earplugs issued so soldiers were the dual-ended Combat Arms™ earplugs.

65. The plaintiff was issued and used the dual-ended Combat Arms™ earplugs when firing weapons and around other loud noises throughout his service, including while stationed at Fort Bragg in North Carolina and Vicenza, Italy.

66. The plaintiff also used the dual-ended Combat Arms™ earplugs while serving on combat deployments in Afghanistan (December 2001 - March 2002) and Iraq (May 2003 - August 2003 and March 2004 to July 2004). The plaintiff participated in multiple bombing operations during those deployments.

67. The plaintiff wore the dual-ended Combat Arms™ earplugs consistent with 3m's instructions

68. The plaintiff was never instructed to fold back the flanges of the earplugs opposite of the side I inserted into my ear canal.

69. Since using the dual-ended Combat Arms™ earplugs, the plaintiff has been diagnosed with tinnitus and has an open claim with the VA for hearing loss.

### First Cause of Action: Product Defect

70. The 3M dual-ended Combat Arms™ Earplugs were defective when they left the possession of 3M.

71. The earplugs failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.

**Complaint for Damages**
*Tupper v. 3M*
Page 8 of 10
Case 3:20-cv-00243-JWS   Document 1   Filed 09/30/20   Page 8 of 10

72. The use of the earplugs in a manner that was reasonably foreseeable by 3M involved a substantial danger that would not be readily recognized by the ordinary user of the cutter and 3M failed to give adequate warning of such danger.

73. The defect in the product was the cause of the plaintiff's injuries.

## Second Cause of Action: Negligence

74. 3M owed the plaintiff a duty to use reasonable care in the design, manufacture, inspection, testing, sale, and marketing of the dual-ended Combat Arms™ Earplugs so that they would be reasonably safe for their intended use and for other uses.

75. 3M breached that duty and was therefore negligent.

76. 3M's negligence was a substantial factor in causing the plaintiff's harm.

## Third Cause of Action: Breach of Warranty

77. The 3M dual-ended Combat Arms™ Earplugs were not fit for the ordinary purpose for which they were used, were not adequately labeled, did not come with adequate warnings, and otherwise breached various express and implied warranties.

## Fourth Cause of Action: Misrepresentation

78. 3M made false or misleading statements regarding the effectiveness and proper use of its dual-ended Combat Arms™ Earplugs.

79. 3M knew, or should have known, that those statements were false or misleading when it made them.

80. 3M intended, or had reason to expect, that users of the earplugs, including the plaintiff, would rely on its statements, and failed to use reasonable care when making the statements.

81. The plaintiff justifiably relied on the statements.

82. The plaintiff suffered a monetary loss.

83. The plaintiff's reliance on the statement was a substantial factor in causing the plaintiff's loss.

## Relief Sought

As a direct result of the defendant's defective product, negligence, breach of warranty, and misrepresentation, Mark Tupper has suffered substantial damage, including but not limited to: severe and permanent physical injury; pain and suffering; severe and permanent emotional distress; loss of

**Sanders Poulson Woolford, LLC**
Attorneys at Law
636 Harris Street
Juneau, Alaska 99801
(907) 586-6529 • (907) 586-6329 Facsimile

enjoyment of life; loss of past and future income and other economic losses; and past and future medical and related expenses in excess of $75,000, the exact amount to be proven at trial.

In addition, the conduct of the defendant was reckless, grossly negligent, and in disregard of the plaintiff's safety and well being. The plaintiff is therefore entitled to an award of punitive damages.

Wherefore, the plaintiff requests a jury trial, and judgment against the defendant as follows:

1. His past and future special and general damages;
2. Punitive damages;
3. Costs and attorney fees incurred in this action; and
4. Such further relief as the court deems appropriate.

Dated this 28th day of September, 2020.

Sanders Poulson Woolford, LLC
Attorneys for the Plaintiff

/s/ Larry R. Woolford
Larry R. Woolford, AK Bar No. 9806023
larry@spw.law

Sanders Poulson Woolford, LLC
Attorneys at Law
636 Harris Street
Juneau, Alaska 99801
(907) 586-6529 • (907) 586-6329 Facsimile